FILED
2026 Oct-22 AM 10:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**DIANE KILLIAN,**

**Plaintiff**,

**v.**

**WALGREEN CO.,**
***d/b/a Walgreens Gardendale Store #06488*,**

**Defendant**.

**Case No. 2:25-cv-966-HDM**

# MEMORANDUM OPINION AND ORDER

Plaintiff Diane Killian sues Defendant Walgreen Co. ("Walgreens") for negligence and wantonness arising from injuries she sustained after she tripped over part of an entrance ramp at its store. (Doc. 1-1 at 3–4). The case is before the court on Walgreens's Motion for Summary Judgment. (Doc. 19). For the reasons below, the motion is due to be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Walgreens's store in Gardendale, Alabama, was constructed around the year 2000. (Doc. 21 at 1, ¶ 4). The store's parking lot has handicap parking spots near its front entrance. (Doc. 23-1, Ex. A at 3). Next to each spot, an accessibility aisle is designated by blue, striped paint. *Id.* The store's entrance ramp is flush with the

parking lot for wheelchair access, with a "tapered curb" or "side flare" on each side that slopes upward from the flat part of the ramp to meet the curb at its normal height. *Id.* An accessibility aisle leads to both the flat portion of the entrance ramp and part of one of its side flares. *Id.* at 4. On September 10, 2024, Killian visited the store and walked through the accessibility aisle to the entrance ramp. (Doc. 21 at 1, ¶¶ 1–2). She then "tripped on an elevated portion of the curb." *Id.* ¶ 2. She fell, striking her face on the concrete. (Doc. 19 at 2; Doc. 20-4 at 24, 93:13–18). The resulting injury required multiple nasal reconstructive surgeries and a spinal fusion procedure. (Doc. 20-4 at 15, 57:14–58:11).



*Figure 1: The location of the incident, as submitted by Walgreens.* (Doc. 20-4 at 69).



*Figure 2: The location of the incident, as submitted by Killian.* (Doc. 22 at 7).

The weather conditions on the day of the accident were sunny and clear. (Doc. 21 at 2, ¶ 10). Killian was not distracted as she walked into the store, she was looking where she was going, and nothing blocked her view of the area where the accident occurred. *Id.* at 3, ¶ 11. There was no foreign substance on the ramp that caused her to fall. *Id.* at 9, ¶ 31. Killian explained that she tripped over the side flare because "it looked flat to [her]" due to the ramp and the side flares being "painted the same color." *Id.* at 7, ¶ 27. She was not looking down at the time of the fall because she does not "look down the whole time [she is] walking." *Id.* at 8, ¶ 28. Killian does not believe, however, that she would have seen the hazard posed by the side flare even if she had looked down at the time of her fall. *Id.* at 4, ¶ 15.

The store's entrance ramp was constructed in compliance with the Americans with Disabilities Act (ADA) and applicable building codes.[1] *Id.* at 1–2, ¶¶ 5–6. There have been no reported incidents of any customer tripping over the ramp in question in the past ten years.[2]

---

[1] Although Killian disagrees in her response brief, (doc. 22 at 7–8), this fact is accepted as true for the purposes of summary judgment. *See infra* note 3 and accompanying text.

[2] Killian asserts that "[j]ust a few months after Ms. Killian, another person tripped and fell in [a] similar location by the bollards at the entrance of that same store." (Doc. 22 at 23). She cites no evidence in support of this assertion. *See id.* The record does contain deposition testimony that "[t]here was another fall in February of [20]25," but the deponent did not "have the specifics of it." (Doc. 20-2 at 29:15–16, 30:11). When asked if he knew where the fall occurred, he responded, "I do not. It was somewhere by those bollards, but I don't know exactly where." *Id.* at 30:12–16. This does not indicate that the second incident occurred because of the curb in question.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). A genuine dispute of material fact exists when "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment always bears the initial burden of identifying the basis for its motion and the portions of the pleadings or filings that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Federal Rule of Civil Procedure 56 requires that the nonmoving party go beyond the pleadings by pointing to affidavits, "depositions, answers to interrogatories, and admissions on file" that show specific facts revealing "a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

## DISCUSSION

As an initial matter, Killian failed to accept, deny, or otherwise respond to Walgreens's factual allegations, (*see* doc. 22), as required by the initial order entered in this case, (doc. 9 at 17). Accordingly, all facts set forth by Walgreens in its statement of undisputed facts, (doc. 21 at 1–9), are deemed admitted for purposes of summary judgment.[3] Regardless, the court still considers the summary-judgment record and views the evidence in the light most favorable to Killian. *See Anthony*, 69 F.4th at 804.

Killian sues Walgreens for both negligence (Count I) and wantonness (Count II), arguing that Walgreens owed Killian a duty to maintain reasonably safe premises, that it acted negligently by failing to distinguish the elevated side flare from the flat part of the ramp, and that it acted wantonly because its failure was conscious, intentional, and done with reckless indifference to the consequences.[4]

[3] The initial order provides: "The first section [of the non-movant's brief in response to a motion for summary judgment] **must** consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. All material facts set forth in the statement required of the moving party **will be deemed to be admitted for summary judgment purposes** unless controverted by the response of the party opposing summary judgment." (Doc. 9 at 17) (emphasis added).

[4] The court will analyze these claims under Alabama law because "[a] federal court sitting in diversity jurisdiction applies the substantive law of the forum state, which, in this case, is Alabama." *J & M Assocs., Inc. v. Romero*, 488 F. App'x 373, 376 (11th Cir. 2012) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

(Doc. 1-1 at 3–5). Genuine issues of material fact exist regarding whether Walgreens acted negligently, precluding summary judgment on Count I. Killian has presented no evidence indicating that Walgreens acted wantonly; accordingly, summary judgment is due to be granted on Count II.

## I. Negligence

To recover on a negligence claim under Alabama law, "a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage." *Lowe's Home Ctrs., Inc. v. Laxson*, 655 So. 2d 943, 945–46 (Ala. 1994). Walgreens does not dispute that there are genuine issues of material fact regarding causation and damages. Killian's expert report states that she tripped on the side flare in question and that she tripped because of the side flare's design and condition. (Doc. 23-1, Ex. A at 14). This is sufficient to create at least a genuine issue of material fact as to causation. The evidence is undisputed that Killian suffered injuries as a result of her fall. (Doc. 22 at 7; Doc. 20-4 at 15–16, 57:14–58:11). The parties also do not dispute the existence or nature of the duty Walgreens owed Killian as an invitee. (*Compare* Doc. 21 at 12, *with* Doc. 22 at 8). Rather, the parties' arguments focus on whether Walgreens breached the duty it owed to Killian.

The Alabama Supreme Court has stated that "[t]he owner of [a] premises owes a duty to business invitees to use reasonable care and diligence to keep the premises

in a safe condition, *or*, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided." *McClurg v. Birmingham Realty Co.*, 300 So. 3d 1115, 1118 (Ala. 2020) (quoting *Armstrong v. Ga. Marble Co.*, 575 So. 2d 1051, 1053 (Ala. 1991)). This duty only applies when "the defendant had or should have had notice of the defect before the time of the accident," *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So. 2d 1162, 1164 (Ala. 1992), and "the owner's duty to make safe or warn is obviated . . . where the danger is open and obvious—that is, where the invitee should be aware of the danger in the exercise of reasonable care on the invitee's part," *McClurg*, 300 So. 3d at 1118 (citation modified). In other words, for an invitee-plaintiff to succeed on a premises liability claim in negligence, there must be an unreasonably dangerous condition that is known or should have been known to the owner-defendant and is not open and obvious to the plaintiff.

Walgreens argues that it is entitled to summary judgment on Killian's negligence claim because, as a matter of law, the side flare does not constitute an unreasonably dangerous condition and, even if it does, the danger is open and obvious. (Doc. 21 at 28).[5] The court disagrees. Killian has introduced genuine issues

---

[5] Walgreens does not separately argue that it lacked actual or constructive notice of the alleged dangerous condition. (*See generally* Doc. 21; Doc. 25). The record creates at least a genuine dispute of material fact as to Walgreens's constructive knowledge, as Walgreens's manager testified that he inspected the premises of the store for safety risks daily and was aware of the side flare where Killian fell. (Doc. 22 at 15–16). In any event, "once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the

of material fact on both points, so summary judgment is due to be denied as to her negligence claim.

**A. Unreasonably Dangerous Condition**

The evidence submitted by Killian creates a genuine dispute of material fact as to whether the side flare constituted an unreasonably dangerous condition. "In Alabama, . . . whether an elevation irregularity in a sidewalk, curb, or threshold constitutes an unreasonably dangerous condition or defect has . . . always been held to be an issue of fact when the plaintiff has presented evidence indicating that the irregularity creates a danger." *Miller ex rel. Miller v. Liberty Park Joint Venture, LLC*, 84 So. 3d 88, 93 (Ala. Civ. App. 2011) (quoting *Howard v. Andy's Store for Men*, 757 So. 2d 1208, 1211–12 (Ala. Civ. App. 2000)) (collecting cases). For example, in *Bogue v. R & M Grocery*, 553 So. 2d 545 (Ala. 1989), the Alabama Supreme Court reversed a grant of summary judgment in a slip-and-fall negligence case because the plaintiff's expert witness "had testified that the fall was caused by a drop in elevation from the doorway of the store to the parking lot." *Miller*, 84 So. 3d at 93. In another slip-and-fall negligence case, *Waits v. Crown Dodge Chrysler Plymouth, Inc.*, 770 So. 2d 618 (Ala. Civ. App. 1999), the Alabama Court of Civil

---

defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident." *Byrne v. Fisk*, 385 So. 3d 973, 982 (Ala. 2023) (quoting *Mims v. Jack's Rest.*, 565 So. 2d 609, 610 (Ala. 1990)).

Appeals reversed summary judgment because "an architect's testimony—that the raised threshold over which the plaintiff tripped . . . was unsafe and dangerous for customers—presented a genuine issue of material fact as to whether a defect existed." *Miller*, 84 So. 3d at 94 (citation modified).

Here, Killian's expert testified that "the abrupt vertical face of the tapered curb adjacent to the corner of the painted access aisle was an unreasonably dangerous tripping hazard." (Doc. 23-1, Ex. A at 13). He further testified that "[t]he lack of prominent conspicuous markings at the tapered curb to alert pedestrians of the abrupt vertical face deprived Killian of an adequate warning," and that it was the side flare's "dangerous condition that caused Killian to fall and be injured." *Id.* at 14. Because Killian has presented evidence indicating that the side flare presented a danger, whether it constituted an unreasonably dangerous condition is a question of fact for the jury. *See Miller*, 84 So. 3d at 93.

Although Walgreens repeatedly mentions compliance with the ADA and building codes, (*see* doc. 21 at 1–2, ¶¶ 5–7; doc. 25 at 1–3), it does not explicitly argue that such compliance mandates a finding that the side flare is not an unreasonably dangerous condition, nor would such an argument be supported by Alabama law. Particularly relevant here is *Howard*, a negligence case where the trial court granted summary judgment in part because there was no evidence that the allegedly dangerous premises defect violated any mandatory laws or building codes.

757 So. 2d at 1211. Rather, the plaintiff's expert in that case testified that his opinions "were based upon the guidance provided regarding trip-and-fall hazards in the American National Standards Institute ['ANSI'] handbook," and "acknowledged that the ANSI standards on which he relied were voluntary, did not have the force of law, and were not mandated by any building code." *Id.* at 1210. He further testified that "the striping of the parking lot tended to suggest a walkway that would lead a pedestrian directly to the point of the tripping hazard," and "that the hazard could have been eliminated or minimized by painting the vertical edge of the sidewalk yellow." *Id.* The Alabama Court of Civil Appeals overturned the grant of summary judgment, holding that the expert's testimony created a genuine issue of material fact as to whether the condition was unreasonably dangerous. *Id.* at 1212. The court further clarified that the expert's "reliance on safety standards that are not mandated by law or incorporated into any applicable building codes" only affected the persuasive weight of the evidence, not whether it created a genuine issue for trial. *Id.* In other premises defect cases, discussion of code violations is altogether absent from the court's analysis. *See, e.g.*, *McClurg*, 300 So. 3d at 1115; *Woodward v. Health Care Auth. of Huntsville*, 727 So. 2d 814 (Ala. Civ. App. 1998).

Killian's expert relies on the exact same standards from ANSI as the expert in *Howard*, emphasizing that those guidelines "encourage the marking of curbs to make them more prominent and capture the attention of an approaching pedestrian." (Doc.

23-1, Ex. A at 10). Her expert also stated that people "approaching the drug store entrance through a blue painted access aisle would reasonably assume the entire striped area was safe[] and not be expecting a tripping hazard in one corner next to the curb ramp." *Id.* at 11. This evidence is nearly identical to the expert testimony in *Howard*. *See* 757 So. 2d at 1210. Thus, Killian's expert report has the same effect as that in *Howard* and creates a genuine dispute of material fact as to whether the side flare she tripped on was an unreasonably dangerous condition. *See id.* at 1212.

The fact that Killian does not rely on building code violations speaks only to the persuasive weight a factfinder will give the evidence. *See id.* "Credibility determinations" and "the weighing of the evidence" are functions reserved for a jury; they are not for the court to determine on summary judgment. *Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* Thus, the relevant question is not whether the side flare satisfied technical requirements but whether its characteristics rendered it unreasonably dangerous. As discussed above, Killian has presented sufficient evidence to create a genuine dispute of material fact on that question.

Walgreens also cites *Miller*, 84 So. 3d 88, and *Edwards v. Intergraph Services Co.*, 4 So. 3d 495 (Ala. Civ. App. 2008), for the proposition that an alleged defect that has existed for years without causing injury is not unreasonably dangerous. (Doc. 21 at 19–20). Relying on this proposition, Walgreens argues that because there

is no record evidence of any accidents similar to Killian's in the past ten years,[6] the side flare does not constitute an unreasonably dangerous condition. (Doc. 21 at 22; Doc. 25 at 6–7).

While *Miller* and *Edwards* do permit an inference that a condition is not unreasonably dangerous in such a scenario, they also make clear that this inference can be rebutted by evidence that the condition is in fact unreasonably dangerous. *See Miller*, 84 So. 3d at 92, 94 (stating that "the burden shifted to [the plaintiff] to present substantial evidence" of an unreasonably dangerous condition and that the plaintiff "presented no such evidence"); *Edwards*, 4 So. 3d at 504 (granting summary judgment because the plaintiff "failed to present substantial evidence indicating that his injury resulted from a defect or instrumentality" on the premises). As explained above, Killian is distinguishable from the plaintiffs in *Miller* and *Edwards* because she has provided enough evidence to create a genuine issue of material fact regarding the danger presented by the side flare. Thus, the lack of prior accidents caused by the condition of the side flare is not fatal to Killian's negligence claim.

**B. Open and Obvious Danger**

Walgreens argues that even if the side flare constituted an unreasonably dangerous condition, the court should still grant summary judgment on Killian's

---

[6] *See supra* note 2.

negligence claim because the defect was open and obvious. (Doc. 21 at 28). The court disagrees. Killian has presented enough evidence to create a genuine dispute of material fact as to whether the danger presented by the side flare was open and obvious.

The owner of a premises does not have a duty to warn invitees of dangers that are "open and obvious." *McClurg*, 300 So. 3d at 1118. The test for an open and obvious danger "is an objective one: Whether the danger should have been observed by the plaintiff, not whether in fact it was consciously appreciated by him or her." *Id.* (citation modified). When a defendant argues that an unreasonably dangerous defect on its premises was open and obvious, the argument acts as an affirmative defense, meaning "the premises owner bears the burden of proving that the danger was open and obvious." *Id.* at 1119.[7] The Alabama Supreme Court "has consistently held that questions of openness and obviousness of a defect or danger are generally not to be resolved on a motion for summary judgment." *Id.* (citation modified) (quoting *Ex parte Kraatz*, 775 So. 2d 801, 804 (Ala. 2000)); *see also Howard*, 757 So. 2d at 1211. "Exceptions to this general rule are narrow, permitted only in

[7] The Alabama Supreme Court noted in *Walter v. Branch Hays Farm SC Assocs., LP*, that it sometimes treats the "open-and-obvious-hazard limitation" as something that "an injured invitee must overcome . . . as a part of his or her case-in-chief" rather than as an affirmative defense that the defendant must prove. No. SC-2025-0160, 2026 WL 547425, at *3 (Ala. Feb. 27, 2026). Whether to treat the open and obvious argument as an affirmative defense or part of Killian's prima facie case makes no difference here because the record creates a genuine dispute of material fact as to whether the alleged danger was open and obvious.

circumstances where reasonable minds could not differ regarding the obviousness of the danger." *McClurg*, 300 So. 3d at 1119.

Killian has introduced evidence that "people are not likely to see and avoid inconspicuous walkway hazards at or near ground level." (Doc. 23-1, Ex. A at 8). Killian's expert stated that people do not tend to look at the ground directly in front of them when walking on a flat surface because, "[g]iven no other visual cues, a pedestrian expects a level walking surface to remain level." *Id.* A lack of visual cues may exist where "[e]nvironmental factors, such as a lack of contrast between the [hazard] and the pavement, . . . decrease the walker's ability to detect it." *Id.* at 9. The expert also noted that the painted accessibility aisle leading to both the ramp and the side flare Killian tripped over acted as "directional guidance to define a safe accessible route, and made it more difficult for pedestrians to distinguish the sloped ramp incline from the abrupt tapered side flare." *Id.* at 11. This evidence creates a genuine dispute of material fact over whether the danger presented by the side flare was open and obvious. Because summary judgment is only appropriate if "reasonable minds could not differ regarding the obviousness of the danger," *McClurg*, 300 So. 3d at 1119, Killian has presented sufficient evidence to preclude summary judgment on the issue.

Walgreens relies on *Owens v. Ganga Hospitality, LLC*, 352 So. 3d 1172 (Ala. 2021), to argue that the side flare, insofar as it presented a danger, presented an open

and obvious one. In *Owens*, the court granted summary judgment to the owner-defendant after the invitee-plaintiff fell off "a raised concrete platform on the side of [a] loading and unloading area . . . , which the parties refer to as a 'curb.'" *Id.* at 1173. The court found that any danger presented by the platform was open and obvious because "the platform is painted red, *which clearly contrasts with the surrounding area*," making "[t]he difference in elevation between the platform and the surrounding area . . . obvious." *Id.* at 1175 (emphasis added).

But *Owens* is not helpful to Walgreens because the precise issue here is that the side flare Killian tripped over was *not* painted a different color from the adjacent ramp. It is immaterial that the red of the side flares and ramp contrasted with the gray sidewalk and black asphalt, (doc. 21 at 21), because Killian tripped on an elevated, red side flare that she could not distinguish from the flat, red walking area of the ramp, *id.* at 6, ¶¶ 26–27. Because both the side flares and the ramp itself were red, the difference in elevation between the two was not so obvious that "reasonable minds could not differ regarding the obviousness of the danger," *McClurg*, 300 So. 3d at 1119. Accordingly, the explicit justification for granting summary judgment in *Owens* is inapplicable here.

Far more relevant is *Woodward*, where an invitee-plaintiff fell off a curb adjacent to a wheelchair ramp in a hospital parking garage. 727 So. 2d at 815–16. Neither the curb nor the wheelchair ramp was marked with any warnings or other

markings. *Id.* at 816. The plaintiff testified that the lighting at the time of her fall made "the curb, or change in height from the sidewalk to the driveway," appear to be "one flat mass of concrete." *Id.* at 817. The trial court granted summary judgment for the defendant, ruling that the curb was an open and obvious condition that should have been discovered by the plaintiff through the exercise of reasonable care. *Id.* at 816. The Alabama Court of Civil Appeals reversed, holding that "questions exist as to whether a reasonable person in [the plaintiff's] position, under the conditions that existed at the time she was injured, would have noticed the hazard," especially because the plaintiff's expert presented evidence "that had the curb been marked with paint or other markings it would have drawn a pedestrian's attention to the hazard." *Id.*

Here, Killian testified that the consistent color of the side flares and ramp made it appear that they were one flat, continuous surface, (doc. 21 at 7, ¶ 27), much like the lighting and consistent color of the sidewalk and driveway in *Woodward* made them appear to be "one flat mass of concrete," 727 So. 2d at 817. This creates a genuine dispute of material fact as to whether a reasonable person in Killian's position would have noticed the hazard posed by the side flare.[8]

---

[8] In *Woodward*, the plaintiff testified at deposition that had she been looking down when she stepped off the curb, she would not have fallen. 727 So. 2d at 816. Despite this testimony, the court held there was a genuine issue for trial on openness and obviousness. *Id.* at 817. Here, Killian's deposition testimony expressly denied that she could have avoided the fall by looking down. (Doc. 21 at 4, ¶ 15). Thus, Killian's evidence provides even stronger justification for why summary judgment is not appropriate on the issue of openness and obviousness here.

Walgreens attempts to distinguish this case from *Woodward* because none of the sidewalk was painted in that case, whereas the ramp at issue here is red, setting it apart from the normal beige of the surrounding curb. Again, this distinction fails because the elevated side flare that Killian tripped over is the same color as the flat part of the ramp. *See supra* Figures 1–2. Killian has presented sufficient evidence for a factfinder to decide that this rendered the side flare an unreasonably dangerous condition that was not open and obvious.

Because there are genuine disputes of material fact as to whether the side flare constituted an unreasonably dangerous condition, whether that condition was open and obvious, and whether Walgreens knew of the condition, summary judgment is improper on the issue of negligence. Accordingly, Walgreens's Motion for Summary Judgment, (doc. 19), is **DENIED** as to Killian's negligence claim.

## II. Wantonness

Next, Killian brings a claim for wantonness. Summary judgment is due to be granted on this claim because Killian has not put forth evidence showing that Walgreens recklessly or consciously ignored a known risk to its customers' safety.

"To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017); *see also Tutor v. Sines*, 380 So. 3d 1035, 1038 (Ala. 2023).

The Alabama Supreme Court has emphasized that "[w]antonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Tutor*, 380 So. 3d at 1038. Whereas "negligence is the inadvertent omission of duty," wantonness "is characterized as such by the state of mind with which the act or omission is done or omitted." *Dorman v. Jackson*, 623 So. 2d 1056, 1058 (Ala. 1993) (quoting *Ex parte McNeil*, 63 So. 992, 993 (Ala. 1913)). Thus, the defendant must have been "conscious that, from doing or omitting to do an act, injury [would] likely or probably result." *Tutor*, 380 So. 3d at 1038.

Killian puts forth no evidence demonstrating that Walgreens acted with reckless indifference to a *known* risk regarding her safety. Instead, she excerpts the deposition of Walgreens's store manager, in which he testified that he was aware that the side flare existed and that he knew safety risks could result in injury if not warned of or fixed. (Doc. 22 at 24–25). But these responses indicate only that the manager understood that he must address things that he perceived to be risks, not that he perceived the side flare to be a risk and consciously or recklessly failed to address it. Indeed, the manager's responses show that he inspected the parking lot and the store premises for potential hazards every morning. (Doc. 20-5 at 10, 30:8–18). If he noticed anything that posed a safety risk, he would "open up a ticket." *Id.* at 32:3–5. The issue was then escalated to his "district manager or the regional

service channel manager," and if it was labeled hazardous, Walgreens typically addressed it within twenty-four hours. *Id.* at 30:23–31:12.

Nothing in these facts indicates that Walgreens consciously or recklessly ignored the risk posed by the side flare; rather, they indicate that Walgreens did not perceive it to be a risk. Killian did not put forth evidence about the state of mind of any Walgreens employee suggesting that Walgreens was conscious that injury would "likely or probably result" from its failure to distinguish the side flare from the flat part of the ramp. *See Tutor*, 380 So. 3d at 1038. Rather, the evidence only establishes that Walgreens knew about the condition of the side flare and believed it was *not* hazardous. And while this may not doom Killian's negligence claim, negligence and wantonness "are qualitatively different tort concepts," *Tutor*, 380 So. 3d at 1038, and this evidence—or lack thereof—does defeat Killian's wantonness claim.

There is no evidence creating a genuine dispute of material fact regarding whether Walgreens had knowledge that "injury [would] likely or probably result" from its failure to address the condition of the side flare. *See id.* Accordingly, Walgreens's Motion for Summary Judgment, (doc. 19), is **GRANTED** as to Killian's wantonness claim.

## CONCLUSION

For the foregoing reasons, Walgreens's Motion for Summary Judgment, (doc. 19), is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion is **DENIED** as to Killian's negligence claim (Count I).
2. The motion is **GRANTED** as to Killian's wantonness claim (Count II), and that claim is **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** on October 22, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE